619 So.2d 1111 (1993)
Mitchell B. JURISICH, Sr., et al.
v.
HOPSON MARINE SERVICE COMPANY, INC., et al.
No. 93-C-0049.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1993.
*1113 James B. Kemp, Jr., Michael F. Walther, Phelps Dunbar, New Orleans, for relator.
George Pivach, II, Pivach, Cossich & Pivach, Belle Chasse, for respondents.
*1114 Before BYRNES, ARMSTRONG and JONES, JJ.
BYRNES, Judge.
Plaintiffs filed suit for damage to their oyster leases[1] against numerous defendants, named in both the original and supplemental petitions, including Phibro Energy, Inc. (Phibro).
The trial court denied Phibro's exceptions, whereupon Phibro applied to this court for supervisory writs.
In Pace v. Chevron, U.S.A., Inc., 579 So.2d 494 (La.App. 4 Cir.1991), this court held that under the Oyster Statutes (LSA-R.S. 56:422 et seq.), an oyster lessee of public record had the right to maintain an action for damages arising out of wrongful injury to the lease. See also LSA-R.S. 56:423(B). Thus, if plaintiffs' leases are valid, they have a judicially enforceable right to recover damages for any injuries to their leased property.
Phibro first argues that the leases violate the State Constitution and the Mineral Code. Phibro relies on Sierra Club v. Dept. of Wildlife, 519 So.2d 836 (La.App. 4 Cir.1988), writ denied 521 So.2d 1151 (La. 1988), which held that the Wildlife and Fisheries Commission was required to comply with public bidding procedures before it granted shell dredging leases which allowed the lessees to take fossil clam and oyster shell deposits from State-owned water bottoms. The court concluded that the right to remove shells was a mineral right, thereby requiring that the leases be subject to public bid.
Sierra Club is inapposite to the present case because the harvesting of live oysters is not a mineral right as defined by LSA-R.S. 31:4 of the Mineral Code which applies to the right to remove shells. Although shells are taken when oysters are harvested, it is not pursuant to the exercise of a mineral right and it is not the equivalent of shell dredging. Phibro's attempt to classify a marine invertebrate as a mineral is without merit.
In 1990, the Legislature enacted LSA-R.S. 41:1225 (originally enacted as LSA-R.S. 41:1215.3) which provides that the Department of Wildlife and Fisheries (DWF) is authorized to grant leases on State-owned water bottoms for oyster cultivation, bedding and harvesting, and that all leases then in force were ratified and continued in force. LSA-R.S. 41:1214, as amended in 1990, exempted leases relative to wildlife, fisheries, and timber from the public bid law. Therefore, under these statutes, plaintiffs' oyster leases are valid.
Phibro argues that the 1990 amendments are unconstitutional special legislation and an unconstitutional attempt to ratify unauthorized acts. The statutes in question do not constitute special, as opposed to general, legislation. A general law is one which operates equally and uniformly upon all persons brought within the relations and circumstances for which it provides or that operates equally upon all persons of a designated class founded upon a reasonable and proper classification. Teachers' Retirement System of Louisiana v. Vial, 317 So.2d 179 (La.1975). A special law affects only a certain number of persons within a class and not all persons possessing the characteristics of the class; and it is directed to secure some private advantage or advancement for the benefit of private persons. Id. Phibro fails to demonstrate how the Legislature's classification of oyster lessees was unreasonable or improper. Phibro's contention is without merit.
Phibro asserts that the leases were, in effect, disguised sales of navigable waterbottoms which is prohibited by Article IX, Sec. 3 of the Louisiana Constitution. Phibro argues that the lease conveyed full ownership rights, especially "the right to maintain an action for damages against any person, partnership, corporation or other entity causing wrongful or negligent *1115 injury or damage to the beds or grounds under lease to such lease," citing LSA-R.S. 56:423(B). This is not a right unique to full ownership. It is no different from the right under LSA-C.C. art. 2703 to sue third parties for damages, as part of the general law "Of lease." Neither are the other rights enjoyed by oyster lessees and cited by Phibro as being tantamount to full ownership:
1. Leases in general are "heritable." LSA-C.C. art. 2731.
2. Leases in general are transferrable. LSA-C.C. art. 2731.
3. Leases in general may be mortgaged. LSA-C.C. art. 3286(4).[2]
Plaintiffs' leasehold interest may be seized and sold for debt, but the waterbottoms themselves may not.
The fifteen year lease terms are not so long as to be tantamount to full ownership.
LSA-R.S. 56:428 does not grant automatic renewal rights in perpetuity to plaintiffs. As distinguished from full ownership, plaintiffs run the risk that their leases may not be renewed when they expire:
"... [T]he legislature intended that the leasing of water bottoms for oyster cultivation and the renewal of those leases are discretionary with the [Department of Wildlife and Fisheries] in its determination that those water bottoms are suitable for oyster cultivation. This discretion continues to exist at the time for renewal of the lease. Vujnovich v. La. Wildlife & Fisheries Com'n, 376 So.2d 330, 331 (La.App. 4 Cir.1979). Emphasis added.
Phibro asserts that plaintiffs' oyster leases were, in effect, a donation of state property in violation of Article 7, Sec. 14 of the Louisiana Constitution, because the $1.00 or $2.00 per acre, per year rental is so low that it might as well be nothing at all. Phibro cites LSA-C.C. art. 2464 which states that "... the sale of a plantation for a $1.00 could not be considered as a fair sale; it would be considered a donation disguised." Where rental payments are nominal, other obligations imposed by the lease may supply the requisite consideration. Arnold v. Board of Levee Com'rs of Orleans Levee Dist., 366 So.2d 1321 (La.1978).
In this case such other obligations are to be found in LSA-R.S. 56:430.
When these obligations are added to the nominal rental the consideration is sufficiently "serious." "Serious" does not mean full value. Where leases are concerned consideration is serious unless it is truly inconsequential:
In such a case the presumption is that the parties did not intend that the trifle named should ever be paid at all, and the situation is looked upon as being as if no amount had been named. Murry v. Barnhart, 117 La. 1023, 42 So. 489, 491 (La.1906).
The statutory obligations incorporated into plaintiffs' leases are serious in every sense of the word. The obligations imposed are not mere trifles; and the fact that they were enacted into law means that they were not intended to be ignored.
When the Legislature enacted these provisions they must have made a determination that the obligations were serious in nature.
In any event, these issues of constitutionality and illegality raised by Phibro are defenses on the merits. In re State ex rel. Wootan, 313 So.2d 621 (La.App. 4 Cir. 1975), writ denied, 318 So.2d 47 (La.1975), cert. denied sub. nom., Morgan v. Wootan, 424 U.S. 912, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976); Mouton v. Bourque, 253 So.2d 689, 691 (La.App. 3 Cir.1971); A Better Place Inc. v. Giani Inv. Co., 445 So.2d 728 (La. 1984). An exception of no right of action is not the proper vehicle for raising these issues.
The State of Louisiana is not an indispensable party. Moreover, plaintiffs, as lessees, have no cause of action against *1116 their lessor, the state, for damage caused by a third party. LSA-C.C. art. 2703. Plaintiffs as lessees are proper parties to sue for damages caused by third persons. LSA-C.C. art. 2703; LSA-R.S. 56:423(B). Oyster lessees have a valuable property right in their oyster beds. Butler v. Baker, 529 So.2d 374, 380 (La.1988).
Accordingly the ruling of the trial court is affirmed.
AFFIRMED.
JONES, Judge, dissenting in part and concurring in part.
I dissent from the majority's opinion insofar as they find that the State of Louisiana is not an indispensable party. I agree with relator that the State's interest, as lessor, should be represented where an award for damages to the waterbottoms is contemplated.
NOTES
[1] Plaintiffs alleged that they held State Leases Nos. 24195, 25162, 26914, 24192, 24194, 24196, and 28612.
[2] The provisions of former LSA-R.S. 9:5102 permitting the mortgaging of leases was incorporated into Paragraph (4) of Article 3286 during the 1991 revision of the mortgage articles.