680 So.2d 783 (1996)
PARADIGM INSURANCE COMPANY
v.
LOUISIANA PATIENT'S COMPENSATION FUND OVERSIGHT BOARD, et al.
No. 95 CA 1727.
Court of Appeal of Louisiana, First Circuit.
September 27, 1996.
*784 Richard L. Weil, New Orleans, for Plaintiff-Appellee, Paradigm Insurance Company.
Stephanie B. Laborde, Baton Rouge, for Defendants-Appellants Louisiana Patient's Compensation Fund Oversight Board and Suanne Grosskopf, Executive Director.
Before: SHORTESS, PARRO and KUHN, JJ.
KUHN, Judge.
This is an appeal from a trial court judgment granting a preliminary injunction. Paradigm sought to enjoin Louisiana Patient's Compensation Fund Oversight Board and its executive director (collectively "the Board") from enforcing a Board rule. This suit is premised on a claim that certain provisions of that rule exceeded the Board's statutory authority. We reverse.

FACTS AND PROCEDURAL BACKGROUND
Petitioner-appellee, Paradigm Insurance Company ("Paradigm"), a surplus line insurer,[1] filed a petition for injunctive and declaratory relief.[2] Paradigm is a foreign insurance company incorporated under the laws of the State of Indiana and is an unauthorized insurer, i.e., an approved insurer on the list maintained by the Commissioner of Insurance for the State of Louisiana ("the Commissioner") under the provisions of La. R.S. 22:1262.1.[3] At issue in this case is the Board *785 rule designated as Title 37, Part III.505 and published in Volume 21, No. 4 of the Louisiana Register, April 1995, at 393-394 ("Rule 505").[4] Rule 505 imposes requirements relative to insurance policies evincing the financial responsibility that a health care provider seeking to enroll in the Louisiana Patient's Compensation Fund ("the Fund") must demonstrate. Paradigm alleges the enforcement of Rule 505 results in a usurpation of the authority vested in the Commissioner and, as such, is illegal.
By agreement of the parties, a temporary restraining order was signed by the trial court on April 19, 1995. After a hearing on May 3, 1995, the trial judge issued a preliminary injunction.[5] Our sole consideration is the propriety of the trial court's issuance of a preliminary injunction.

ANALYSIS
La. C.C.P. art. 3601 provides, "An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law." Generally, in order to prevail at a hearing for a preliminary injunction, the moving party must satisfy three requisites to such relief, namely:
(1) the injury, loss, or damage he will suffer if the injunction is not issued may be irreparable;
(2) he is entitled to the relief sought; and
(3) he will be likely to prevail on the merits of the case.
State v. Atterberry, 95-0391, p. 5 (La.App. 1st Cir. 11/9/95); 664 So.2d 1216, 1220.
Although the issue of whether irreparable harm exists is usually determinative of whether a preliminary injunction should issue, when the petitioner is alleging the defendant is acting in direct violation of prohibitory law, there is no need to prove irreparable harm. La. Associated Gen. Contr. v. Calcasieu Parish School Bd., 586 So.2d 1354, 1359 (La.1991); State v. Atterberry, 95-0391 at p. 6; 664 So.2d at 1220.
*786 At oral argument, counsel for Paradigm conceded the trial court's ruling granting the injunctive relief was not based on a finding of irreparable harm.[6] Thus, the correct issue to be determined is whether the Board's actions in adopting and enforcing Rule 505 directly violate a prohibitory law.
The current version of Rule 505 was amended by the Board pursuant to the authority vested to it under the provisions of La. R.S. 40:1299.41 et seq. At the time of the hearing for the preliminary injunctive relief, La. R.S. 40:1299.44(D) provided, in pertinent part:
(2)(a) The [B]oard shall be responsible, and have full authority under law, for the management, administration, operation and defense of the [F]und in accordance with the provisions of this Part.
(b) In addition to such other powers and authority elsewhere expressly or impliedly conferred on the [B]oard by this Part, the [B]oard shall have the authority to:
* * * * * *
(ii) Establish and define the standards and forms of financial responsibility required of self-insured health care providers and the forms of malpractice liability insurance policies which are acceptable as proof of financial responsibility pursuant to R.S. 40:1299.42,[7] as a condition to initial and continuing enrollment with the [F]und.[8] (Footnotes added.)
In April 1995, the Board officially adopted the current version of Rule 505 which provides in relevant part:
B. To be acceptable as evidence of financial responsibility, an insurance policy:
1. must be issued:
a. by an insurance company admitted to do business in this state; or
b. by an unauthorized insurer which is on the list of approved unauthorized insurers maintained by the commissioner of insurance pursuant to R.S. 22:1262.1 and which has:
i. a rating by A.M. Best and Co. of "A-" or higher; or
ii. a rating by Standard and Poor's of "AA-" or higher; or
iii. a rating by Moody's of "Aa" or higher....
In granting the preliminary injunction the trial court, apparently relying on the general powers conferred on the Commissioner by La. R.S. 22:2(A)(1), determined the actions of the Board in adopting and enforcing Rule 505 constituted a usurpation of the Commissioner's authority. The trial court reasoned that such a usurpation amounted to illegal conduct on the part of the Board, and it granted Paradigm's request for a preliminary injunction.
On the day of the hearing, La. R.S. 22:2(A)(1) provided, in relevant part, "Pursuant to the authority contained in the constitution of Louisiana, the office of the commissioner of insurance is created. It shall be the duty of the commissioner of insurance to administer the provisions of this Code."[9] The provisions of La. R.S. 22:2(A)(1) do not expressly prohibit the Board from adopting and *787 enforcing the provisions of Rule 505. Thus, we find the actions of the Board in adopting and enforcing Rule 505 are not in direct violation of an express prohibitory law.[10] Because these Board actions are not in direct violation of a prohibitory law and Paradigm has failed to prove irreparable harm, we find no basis to sustain the trial court's issuance of the preliminary injunction.

CONCLUSION
For the reasons assigned, the trial court's judgment ordering the issuance of the preliminary injunction enjoining the Board from enforcing Rule 505 is reversed. All costs of this appeal are assessed against Paradigm.
REVERSED.
NOTES
[1] La. R.S. 22:1257 provides, "If certain insurance coverages cannot be procured from authorized insurers, such coverages, hereinafter designated as `surplus lines', may be procured from unauthorized insurers provided that the insurance is procured through a licensed surplus line broker."
[2] In addition to its original petition, Paradigm filed a supplemental and amending petition. We refer to the original and subsequent petitions collectively as "the petition."
[3] La. R.S. 22:1262.1 provides:

A. No surplus line broker shall place surplus line insurance with an insurer who is not on the list of approved unauthorized insurers as compiled and maintained by the commissioner of insurance.
B. (1) To obtain and maintain placement on the list of approved unauthorized insurers, a foreign insurer shall annually file with the commissioner the following:
(a) A copy of the insurer's annual statement, signed and sworn to by its president and secretary as to its condition as of the preceding December 31st, evidencing that the insurer has capital and surplus of not less than two million dollars exclusive of either surplus of subordinated notes.
(b) An affidavit signed and sworn to by its president and treasurer that the insurer has passed a specified number of the Insurance Regulatory Information Systems tests as prescribed by the National Association of Insurance Commissioners so as not to be placed on their targeted list.
(c) Evidence that the amount of net premiums written does not exceed four times the insurer's capital and surplus.
(d) Evidence that, if the insurer issues worker's compensation insurance in this state, it has established and maintained a worker's compensation claims office pursuant to R.S. 23:1161.1 or has retained a licensed claims adjuster.
(e) A copy of the producer production report listing all business placed with the company by licensed surplus line brokers. The report shall be filed with the Department of Insurance no later than April fifteenth of each year.
(2) An insurer that fails to file a copy of its annual statement on or before March 1st of each year shall be removed from the list of approved unauthorized insurers. The Commissioner may grant an extension, not to exceed thirty days, if presented with satisfactory evidence showing the reasonableness of the extension.
C. To obtain and maintain placement on the list of approved unauthorized insurers, an alien insurer shall comply with R.S. 22:1262(B)(2). The commissioner shall remove any alien insurer from the list of approved unauthorized insurers if it ceases to comply with R.S. 22:1262(B)(2), or if he determines that continued placement of surplus line insurance with the insurer would not be in the best interest of the policyholders or citizens of Louisiana.
D. The commissioner shall remove a foreign insurer from the list of approved unauthorized insurers if:
(1) The insurer does not have capital and surplus of at least two million dollars exclusive of surplus debentures and subordinated notes, as determined by his examiners.
(2) It is determined that the continued placement of surplus line insurance with the insurer would not be in the best interest of the policyholders or the citizens of Louisiana.
E. The commissioner may remove a foreign insurer from the list of approved unauthorized insurers if:
(1) The insurer fails to pass the prescribed number of Insurance Regulatory Information Systems tests.
(2) The amount of net premiums written exceeds four times the insurer's capital and surplus.
(3) The insurer fails to deliver any information requested by the commissioner within thirty days.
(4) The insurer issues worker's compensation insurance within the state, and fails to establish and maintain a worker's compensation claims office pursuant to R.S. 23:1161.1 or fails to retain a licensed claims adjuster.
F. Upon removing an insurer from the list of approved unauthorized insurers, the commissioner shall notify in writing the insurer and all licensed surplus line brokers of such action in writing.
G. The commissioner shall have the authority to adopt and promulgate such rules and regulations as are necessary to carry out the provisions of this Section in accordance with the Administrative Procedure Act.
[4] Paradigm filed its petition for injunctive and declaratory relief prior to the effective date of the current version of Rule 505. Subsequent to the trial court's issuance of a temporary restraining order, the current version of Rule 505 was officially adopted. Although the judgment in this matter states the Board is enjoined from enforcing both Rule 505 and the amended Rule 505, it is those provisions in the amended version of Rule 505 which Paradigm alleges exceed the Board's statutory authority. Therefore, for brevity, we refer to both versions of Rule 505 collectively as "Rule 505."
[5] Although Paradigm's petition seeks both injunctive and declaratory relief, the order for the rule to show cause clearly shows the sole issue before the trial court at the May 3, 1995 hearing was whether to grant the injunctive relief. Declaratory relief is not available by means of a summary proceeding. See La. C.C.P. art. 2592.
[6] We find no manifest error in the trial court's finding of no irreparable harm.
[7] Under the provisions of La. R.S. 40:1299.42(E), the financial responsibility of a health care provider may be established only by filing with the Board proof that the health care provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim.
[8] Subsequent to the trial court's issuance of a preliminary injunction in this matter, by Acts 1995, No. 1258, § 1, the Louisiana legislature amended La. R.S. 40:1299.44(D)(2)(b)(ii) so as to confer on the Board the authority to:

Establish and define the standards and forms of financial responsibility required of self-insured health care providers, and the standards and forms of malpractice liability insurance policies issued by admitted insurance companies and the standards, forms, acceptable ratings and other criteria for medical malpractice liability insurance policies issued by non-admitted insurance companies which are acceptable as proof of financial responsibility pursuant to R.S. 40:1299.42, as a condition of initial and continuing enrollment with the [F]und.
Pursuant to La. Const. art. III, § 19, the general effective date of all laws enacted in the 1995 Regular Session was August 15, 1995.
[9] Although La. R.S. 22:2(A)(1) was subsequently amended by Acts 1995, No. 846, § 1, the amendment made no substantive changes to the quoted portion of this provision.
[10] Paradigm's petition also alleges Rule 505 violates the United States Constitution because it interferes with the free flow of commerce. The constitutionality of Rule 505, enacted pursuant to the authority conferred on the Board pursuant to the provisions of La. R.S. 40:1299.44(D)(2)(b)(ii), must first be questioned, and a contradictory hearing held, in the trial court. See Williams v. State, 95-0713, pp. 5-6 (La. 1/26/96); 671 So.2d 899, 902. Nothing in the record shows such a hearing has occurred in this matter. Thus, we do not address whether Rule 505 and/or the Board's adoption and enforcement of that rule is in abrogation of the United States Constitution.