722 So.2d 1008 (1998)
Mitchell B. JURISICH, Sr., Mitchell B. Jurisich, Jr., Frank Jurisich, G.I. Joe, Inc., Gulf Star Oysters, Inc., and Bayou Canard, Inc.
v.
James H. JENKINS, Jr., Secretary of the Louisiana Department of Wildlife & Fisheries, the Louisiana Department of Wildlife & Fisheries, and the Louisiana Wildlife & Fisheries Commission.
No. 97 CA 1870.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
Rehearing Denied December 11, 1998.
*1010 George Pivach, II, Michael L. Martin, Belle Chase, Counsel for Plaintiffs-Appellants Mitchell B. Jurisich, Sr., Mitchell B. Jurisich, Jr., Frank Jurisich, G.I. Joe, Inc., Gulf Star Oysters, Inc., and Bayou Canard, Inc.
Richard P. Ieyoub, Attorney General by Andrew C. Wilson, Donna M. Young, Asst. Attorneys General, Donald E. Puckett, John R. Chase, New Orleans, Counsel for Defendants-Appellees James H. Jenkins, Jr., Louisiana Department of Wildlife & Fisheries, and Louisiana Wildlife & Fisheries Commission.
BEFORE: GONZALES, KUHN, and WEIMER, JJ.
WEIMER, J.
This case is before the court for a determination of whether the trial court properly denied a request by owners of certain oyster leases for the issuance of a preliminary injunction against the State prohibiting the insertion of certain clauses or stipulations in renewal leases.

FACTS
Plaintiffs, Mitchell B. Jurisich, Sr.; Mitchell B. Jurisich, Jr.; Frank Jurisich; G.I. Joe, Inc.; Gulf Star Oysters, Inc.; and Bayou Canard, Inc., (collectively referred to as "the JURISICHS") have been the owners of and/or successors of holders, agents, or sublessees of oyster leases with the State of Louisiana. The subject oyster leases covering certain State owned water bottoms were for 15 year terms and expired on December 31, 1996.
The JURISICHS were notified by mail that the State was electing not to renew the leases and, therefore, the leases would terminate effective at the end of the term on December 31, 1996. The JURISICHS were further informed that the State would consider granting new leases, for a term of 15 years, covering the same areas as previously leased if they would execute new leases by February 28, 1997. The new leases would be retroactive to January 1,1997.
The new oyster leases contain stipulations/clauses that were not included in the prior oyster leases. The JURISICHS object to the inclusion of the clauses which they claim effectively deprives them of a property right. They contend that inclusion of the new clauses in the leases forces them to accept the changes or abandon the leases along with any improvements they had previously made to the lease locations. The clauses at issue in the controversy are referred to as "Navigation and Oil Field Activity," "Future Litigation," "Coastal Wetlands Restoration Advisory," "Allocation of Risk and Liability, and Indemnification" and "Venue."

PROCEDURAL HISTORY
The JURISICHS sued the defendants, James H. Jenkins, Jr., Secretary of the Louisiana *1011 Department of Wildlife & Fisheries, the Louisiana Department of Wildlife & Fisheries and the Louisiana Wildlife & Fisheries Commission, (collectively referred to as "LDWF") seeking a declaratory judgment, damages and a permanent injunction coupled with a rule for a preliminary injunction. The JURISICHS sought to have LDWF enjoined from canceling various oyster leases. They object to executing new leases that contain certain new clauses or stipulations. In addition, the JURISICHS sought damages for loss of income, loss of valuable improvements and other damages proved at trial. The JURISICHS also sought to have LSA-R.S. 49:214.5 declared inapplicable to any lease originally granted prior to January 1, 1995, or alternatively, sought to have LSA-R.S. 49:214.5 declared unconstitutional.
The JURISICHS subsequently filed a First Supplemental and Amending Rule for Preliminary Injunction Petition, Petition for Declaratory Judgment, for Damages and for Permanent Injunction. That petition incorporated an agreement reached by the parties which was attached to the supplemental petition as Exhibit "A". The leases were renewed effective January 1, 1997, for a term of 15 years, reserving unto the parties "the right to pursue the outcome from this litigation through the final stages of appeal, to final judgment." In effect, the parties renewed the leases, subject to a judicial determination regarding the applicability of the stipulations and clauses at issue.
The prayer of the supplemental petition sought, among other relief: (1) to enjoin the State of Louisiana from requiring the JURISICHS to agree to the stipulations and from including stipulations in lease agreements applied for or sought to be renewed in the future; (2) to order LDWF to strike stipulations from renewal lease agreements for specified oyster leases, or declare the stipulations non-binding on the JURISICHS with respect to the oyster leases; and (3) to declare the oyster leases renewed as of January 1,1997.
Following the hearing, the trial court granted the preliminary injunction in part and denied the preliminary injunction in part. The preliminary injunction was granted enjoining the defendants from including the clause regarding Venue in the renewal leases. (That ruling has not been appealed.) The preliminary injunction was denied as to the inclusion of clauses or stipulations referred to as the Navigation and Oilfield Activity Clause, the Coastal Wetlands Restoration Advisory, and the Allocation of Risks and Liability and Indemnification Clauses and the Future Litigation Clause.
In accordance with oral reasons assigned on the date of the hearing, the trial judge signed a judgment on April 1, 1997. The JURISICHS appeal the decision of the trial court denying the preliminary injunction citing three assignments of error. They allege the trial court erred by denying their petition for preliminary and permanent injunctions[1] with respect to: (1) the Navigation and Oil Field Activity stipulation, (2) the Future Litigation stipulation and (3) the "Wetlands stipulation" consisting of the Coastal Wetlands Restoration Advisory clause, and the Allocation of Risk and Liability, and Indemnification clause.
For the reasons that follow, the trial court judgment is affirmed.

LAW
Generally a party seeking issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue and must also show entitlement to the relief sought. This must be done by a prima facie showing that the party will prevail on the merits of the case. However, a showing of irreparable injury is not necessary when deprivation of a constitutional right is involved. Brennan v. Board of Trustees for University of Louisiana Systems, 95-2396, p. 6 (La.App. 1 Cir. 3/27/97), 691 So.2d 324, 328. Although the issue of whether irreparable harm exists is usually determinative of whether a preliminary injunction should issue, when petitioner is alleging *1012 defendant is acting in direct violation of prohibitory law, there is no need to prove irreparable harm. LSA-C.C.P. art. 3601; Paradigm Insurance Company v. Louisiana Patient's Compensation Fund Oversight Board, 95-1727, p. 4 (La.App. 1 Cir. 9/27/96), 680 So.2d 783, 785.
In the case before the court, the JURISICHS alleged the action taken by the Secretary of the Louisiana Department of Wildlife and Fisheries is in violation of State law, particularly La. Const. Art. I, sec. 22 and Art. XII, sec. 10 as well as selected provisions of LSA-R.S. 56:421 et seq. The parties were in agreement, and the court acknowledged, the JURISICHS would be required to establish that LDWF acted in direct violation of prohibitory law in order to be entitled to a preliminary injunction. They would not be required to prove irreparable injury in order to obtain relief.
The granting of oyster leases on State owned water bottoms by the Secretary of the Louisiana Department of Wildlife & Fisheries is governed by the provisions of LSA-R.S. 41:1225 which refers to Title 56 of the Louisiana Revised Statutes, Chapter 1, Part VII, Subpart D, titled "Oysters and Oyster Industries." LSA-R.S. 56:425 C[2] specifically grants the secretary authority and discretion to include stipulations and clauses in the oyster leases he deems necessary and proper to develop the oyster industry, so long as the stipulations are consistent with the provisions of Subpart D.
Additionally, as stated in Martinez v. Louisiana Department of Wild Life and Fisheries, Guidry, 514 So.2d 140, 143-144 (La.App. 4 Cir.1987), writ denied, 519 So.2d 126 (1988), "[E]ven after a lease application is favorably acted upon, the decision to lease any or all of the applied for acres remains discretionary with the Department." (Citations omitted.)
Statutes governing oyster leases do not grant automatic renewal rights in perpetuity to lessees of oyster beds. Although an owner of an expiring oyster lease has the "first right of renewal" of his/her lease, this right is subject to the provisions of Subpart D and rules and regulations established by the Louisiana Department of Wildlife and Fisheries.[3] Lessees run the risk their leases may not be renewed when they expire. The decision to grant or renew a lease is discretionary with the Secretary of the Department of Wildlife and Fisheries. Jurisich v. Hopson Marine Service Company, Inc., 619 So.2d 1111, 1115 (La.App. 4 Cir. 1993); Vujnovich v. Louisiana Wildlife & Fisheries Commission, 376 So.2d 330, 331 (La.App. 4 Cir.1979).
Moreover, the Louisiana Supreme Court stated in Plaquemines Parish Commission Council v. Perez, 379 So.2d 1373, 1382 (La. 1980):
Because an injunction constitutes a form of active judicial interference with continuing activities, the courts have been very reluctant to grant such a remedy where the actions complained of are those of departments of the executive and legislative branches of government, in the exercise of their authority. In Durrett Hardware & Furniture Co. v. City of Monroe, 199 La. 329, 340, 5 So.2d 911, 915 (1942), this court noted:
"Under our system of government providing for a distribution of powers between the legislative, executive and judicial departments, it is of vital importance that no one department unduly interfere *1013 with or hinder any other department while the latter is acting or assuming to act within the scope of the particular powers reserved to it...."
In this appeal we are to decide only whether the trial court properly denied a preliminary injunction in connection with a suit for declaratory and permanent injunctive relief. During the pendency of the main demand, a party may obtain by summary process a preliminary injunction. The issuance of a preliminary injunction lies within the discretion of the trial court, but that discretion is reviewable if erroneously exercised. Freeman v. Treen, 442 So.2d 757, 761 (La.App. 1 Cir.1983).
A preliminary injunction is essentially an interlocutory order issued in summary proceedings incidental to the main demand for permanent injunctive relief. It is designed to and serves the purpose of preventing irreparable harm by preserving the status quo between the parties pending a determination on the merits of the controversy. Before issuing the preliminary injunction, the trial court should consider whether the threatened harm to the plaintiff outweighs the potential for harm or inconvenience to the defendant and whether the issuance of the preliminary injunction will disserve the public interest. Freeman v. Treen, 442 So.2d at 763.
The principal demand, as opposed to the preliminary injunction, is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or tentatively decide merit-issues. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 494 (La.1979); Hays v. City of Baton Rouge, 421 So.2d 347, 350 (La.App. 1 Cir.), writ denied, 423 So.2d 1166 (1982). Only where the parties have expressly agreed to submit the case for final decision at the hearing on the rule for a preliminary injunction, may the ruling on the preliminary injunction definitively dispose of the meritissues. State ex rel. Guste v. City of New Orleans, 363 So.2d 678, 680 (La.1978). There is nothing in the record to reflect such an express agreement in this case.
It is not our purpose to make a general declaration as to the validity of the stipulations/clauses at issue. Although the preliminary injunction hearing may have touched upon or tentatively decided meritissues, the validity of the stipulations/clauses at issue is a matter to be decided on the merits after a full trial by ordinary proceedings. Plaintiffs are attempting to have this court decide substantive issues on a limited record after a summary proceeding. Because the matter involved a preliminary injunction, we are limited to a determination of whether the trial judge erroneously exercised his discretion.
In Oral Reasons for Judgment pronounced at the close of the hearing on March 18,1997, the trial judge addressed the issues as narrowed by the parties and addressed each of the clauses or stipulations at issue.
The trial court found that the Navigation and Oil Field Activity Clause renders the oyster leases subservient only to normal, usual, and permissible mineral and oil field activity being conducted with pre-existing state approval. Thus, the JURISICHS would have available an action for wrongful or negligent damage to their lease under LSA-R.S. 56:423 B(1). The trial court further ruled that pursuant to LSA-R.S. 56:425 C, the actions of the Secretary of the Louisiana Wildlife and Fisheries are to a great extent discretionary and cannot be considered a violation of state law for the purpose of the issuance of an injunction.
The trial court addressed the Coastal Wetlands Restoration Clause and the Allocation of Risk and Liability Clause together. The court found that LSA-R.S. 49:214.5[4], as an *1014 expression of legislative will, mandates the inclusion of those clauses in any leases granted after July 1, 1995. Because all leases issued by the Department of Wildlife & Fisheries to oyster farmers expire by their own terms at the end of the fifteen year period, any leases provided after the expiration of that term are in fact granted by the department and come within the statute. The court found that legislative intent clearly indicated the statute was to apply to all leases, not just those granted on new acreage. The trial court also found that the clauses were not unconstitutional under La. Const. Art. XII, sec. 10.
As to the Future Litigation Clause, the court found that it is for the benefit of the oyster industry as a whole and is within the discretionary powers of the Secretary of the Louisiana Department of Wildlife & Fisheries under LSA-R.S. 56:425 C. The injunction was denied as to that clause or stipulation.
The trial court granted the injunction as to the Venue Clause. The court found the clause to be overly broad and that it violated statutory law. That ruling has not been appealed.
A trial judge has great discretion to grant or deny injunctive relief. The granting or denial of a preliminary injunction is a matter within the sound discretion of the trial court and will not be disturbed on appeal in the absence of clear abuse of discretion. Seafood Restaurant Services, Inc. v. Bonanno, 95-0058, p. 7 (La.App. 1 Cir. 11/9/95), 665 So.2d 56, 61; State Through Louisiana State Board of Examiners of Psychologists of Department of Health and Human Services v. Atterberry, 95-0391, p. 6 (La.App. 1 Cir. 11/9/95), 664 So.2d 1216,1220.

CONCLUSION
In the case before us the JURISICHS failed to establish LDWF acted in direct violation of the Louisiana constitution or prohibitory law. To the contrary, the secretary is specifically granted authority to include stipulations in oyster leases. LSA-R.S. 56:425 C. Additionally, the secretary is afforded authority and discretion in determining whether to grant or renew oyster leases.
Given the authority and discretion afforded the secretary, coupled with the great discretion afforded the trial judge to grant or deny a preliminary injunction, we determine the trial judge did not err in denying the preliminary injunction. The interesting and difficult issues raised by the actions for declaratory judgment and permanent injunction remain to be addressed by the trail court.
Accordingly, we affirm the denial of the preliminary injunction. All costs of the appeal are assessed to appellants.
AFFIRMED.
NOTES
[1] The trial court judgment addresses only the preliminary injunction issue. The hearing was a summary procedure pursuant to a rule to show cause. It was not a trial on the merits for a permanent injunction.
[2] LSA-R.S. 56:425 C provides:

The secretary may make such stipulations in the leases made by him as he deems necessary and proper to develop the industry; however, these stipulations must be consistent with the provisions of this Subpart.
[3] LSA-R.S. 56:428 provides in part:

A. [L]eases made under the provisions of this Subpart shall begin on the day the lease is signed and continue for a period of fifteen years. The owners of expiring leases have first right of renewal of their leases. However, this right to renewal shall be subject to the provisions of this Subpart. Leases carry the first right of renewal for successive periods of fifteen years each, provided the lease is capable of supporting oyster populations. Renewals shall be executed by the secretary and shall be made subject to both the provisions of this Subpart and to the rules and regulations established by the department.
B. The secretary has sixty days from the date of expiration of a lease to execute a renewal lease.
[4] LSA-R.S. 49:214.5 provides:

A. Notwithstanding any other law to the contrary, the state of Louisiana, its political subdivisions, and its agents or employees shall be held free and harmless from any claims for loss or damages to rights arising under any lease, permit, or license granted to any individual or other entity for any purpose on state lands or water bottoms from diversions of freshwater or sediment, depositing of dredged or other materials or any other actions, taken for the purpose of management, preservation, enhancement, creation or restoration of coastal wetlands, water bottoms, or related renewable resources.
B. All departments, agencies, boards, or commissions of the state of Louisiana and its political subdivisions shall include language which shall hold the state and its political subdivisions harmless for the purposes set out in this Section in all leases, permits, or licenses granted to any individual or other entity after July 1, 1995.